IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

ALVIN GELFOUND, individually, and on behalf of
all those similarly situated,

                                                   CASE NO. 13-cv-80479 (KAM)

      Plaintiff,

v.

METLIFE INSURANCE COMPANY OF
CONNECTICUT,

      Defendant.

_____/

**PLAINTIFF'S SECOND RENEWED MOTION FOR CLASS CERTIFICATION AND
INCORPORATED SUPPORTING MEMORANDUM**

      Plaintiff Alvin Gelfound[1] brings this Second Renewed Motion For Class Certification.

Consistent with the instructions from the Court's July 7, 2015 Order,[2] Gelfound has

determined that:

- Maryland law controls the claims of Gelfound;

- five of defendant MetLife Insurance Company of Connecticut's "Benefit Inflator Riders" are essentially identical;

- the class period for all class members runs from Feb. 21, 2010 to the date the Court certifies the class;

- the class excludes all persons whose policies were delivered (and thus whose claims are controlled by the law in) the following five jurisdictions: District of Columbia, Hawaii; Kentucky and South Dakota; and

- the net class membership (after deducting those persons whose claims are controlled by the five jurisdictions mentioned above) is 1,840 persons.

---

[1] Alvin Gelfound died during the pendency of this lawsuit; his interests are being prosecuted by his daughter and trustee Linda Margolius. For ease of reference, the document will refer to the name Gelfound and use the masculine pronoun "he" to refer to plaintiff.

[2] Docket No. 69.

1

Accordingly, that leaves the following proposed class:

> All individuals who (a) purchased a LTC2 long term care policy
> from The Travelers Insurance Company (acquired by MetLife
> Insurance Company of Connecticut) and (b) who paid an annual
> 5% benefit inflation rider on either form H-5IR, H-5IR-1, H-5IR-2,
> H-5IR-3 and/or H-5IR-4 (c) after the Policy Date anniversary on
> which they turned 86 (d) any time beginning Feb. 21, 2010 to the
> date certification is granted (e) in circumstances in which their
> policy application's billing address was <u>not</u> the District of
> Columbia, Hawaii, Kentucky, Ohio and/or South Dakota.

The Court should certify the class. Gelfound has described an ascertainable, united

class whose claims are – finally – appropriate for resolution on a classwide basis.

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S SECOND RENEWED MOTION TO CERTIFY**

## I.   INTRODUCTION

At the onset, it is appropriate for Gelfound – and his counsel – to thank the Court for one last shot at getting this right. This motion comes in response to the Court's order denying Gelfound's first renewed motion to certify. The Court denied that motion and instructed Gelfound to focus, mainly, on two things: *First*, the Court instructed Gelfound to demonstrate that the five riders at issue here were identical;[3] *Second*, the Court advised Gelfound that class members claims would be controlled by the law of the state in which the class member accepted delivery of the contract.[4] Accordingly, this brief focuses on those two concerns and related issues that arise from their resolution, and will not address all of the elements of Fed. R. Civ. P. 23. Those elements were briefed in Gelfound's two sets of briefs[5] (which are incorporated here).  To the extent those previously-briefed issues are raised by MetLife in its opposition, Gelfound will address them in his reply brief.

## II.   ARGUMENT

### A.   The contracts are uniform

On July 24, 2015, MetLife responded to discovery propounded by Gelfound the day the Court denied his renewed motion to certify. Among other things, MetLife produced five versions of the Annual Benefit Inflator Rider: Forms H-5IR, H-5IR-1, H-5IR-2, H-5IR-3 and H-5IR-4. They are attached, in that order, within **Attachment A** to the accompanying **Lewis**

---

[3] *Id.* at 10 ("The Court is unable to locate these various forms in the record; therefore, the Court is unable to ascertain whether this case presents 'a situation in which all plaintiffs signed the same form contract,' as opposed to the situation in which class members signed five different form contracts.").

[4] *Id*. at 5.

[5] Docket Nos. 24; 25; 49; 50; 56; 60; 62.

**Declaration**. Gelfound purchased form H-5-IR-2;[6] the other four are essentially identical to the one he purchased. (The only variance appears to be in Form H-5IR-1, which has a reinstatement provision whose terms are not at issue in this case). Because "claims arising from interpretations of a form contract appear to present the classic case for treatment as a class action,"[7] these uniform riders strongly support Gelfound's motion.

**B.      Maryland law controls Gelfound's claims**

In its July 7, 2015 order, the Court concluded the Gelfound's claims are controlled by the law of the state "in which Plaintiff accepted delivery of the contract."[8] That conclusion means – as the Court noted – that Gelfound's theory that Connecticut law controls Gelfound's claim is wrong. But it *also* means that MetLife's view that Virginia law controls Gelfound's claim is wrong, as well.

In fact, the record demonstrates that the place Gelfound "accepted delivery of the contract" was Maryland.  This is proven by Gelfound's application for MetLife insurance, in which he indicates that his residence is in Bethesda, Maryland, and further leaves blank the line for his billing address, which is supposed to be left blank if the billing address and residence address are the same.[9] This conclusion is buttressed by MetLife's Feb. 4, 1994 correspondence to Gelfound, addressed at his Bethesda, Maryland address, which enclosed his "policy enhancement rider."[10] And on May 2, 1994, Gelfound wrote to MetLife concerning the policy and indicated his address was the same location in Bethesda,

---

[6] MetLife 10/17/2014 Br. (Docket Entry #57) at 8 ("Gelfound, however, was issued rider form H-5IR-2, which was the rider form approved for use in Virginia.").

[7] *In re Checking Account Overdraft Litig.*, 286 F.R.D. 645, 652 (S.D. Fla. 2012)(internal quote marks and citation omitted).

[8] Docket Entry #69, at 5.

[9] **Lewis 7/31/2015 Decl., Att. B.**

[10] *Id.* **at Att. C.**

Maryland.[11] MetLife responded on May 13, 1994 with a letter sent, again, to Gelfound's Bethesda, Maryland address.[12] Even MetLife's declarant on this issue, Kerry Gilmurray, concedes that he "understand[s] Mr. Gelfound was a Maryland resident at the time of purchase…"[13] Nevertheless, MetLife asserts – through Gilmurray's declaration – that Virginia law controls because his application was signed in Virginia (where Gelfound ran a business) and his policy was issued for delivery in Virginia[14] (a statement that is unexplained by Gilmurrary and not demonstrated by the policy itself). Even if those statements are true, they do not control the question of which state law applies in this lawsuit. Here, it's where the policy was delivered, and the evidence demonstrated that state is Maryland.

This Court's finding also bears on class certification generally, as the state in which each class member received the policy (as evidenced by the applicant's billing address) will govern that person's legal claims. This is discussed below.

C.     **Maryland's three-year statute of limitation controls**

As MetLife has already indicated to this Court, Maryland has a three-year statute of limitation applicable to contract claims.[15] Along with Alaska, Colorado, Delaware, the District of Columbia, Mississippi, New Hampshire, North Carolina, South Carolina and Utah, this is the shortest statute of limitation among the jurisdictions at issue here. But because Maryland applies to Gelfound's claim, it is appropriate to limit the class period to three years to his claim, and across-the-board. Accordingly, Gelfound's proposed class period

---

[11] *Id.* at Att. D.
[12] *Id.* at Att. E.
[13] Docket Entry #48-2, ¶ 19.
[14] *Id.*
[15] Docket Entry #48-4, at 4.

extends back three years from the date of the commencement of this case (back to February 21, 2010) to the date the Court certifies the class.

**D.  Gelfound's proposed class includes the logical grouping of states with similar rules on relevant issues**

Numerous courts have certified multi-state classes on breach of contract claims.[16] And indeed, this Court's July 7, 2015 Order doesn't suggest that such certification isn't impossible, merely that Gelfound hadn't met his burden: "Although various state laws apply, a class may be certified upon a showing of uniformity or the existence of only a small number of applicable standards (that is, 'groupability') among the laws of the fifty states."[17]

What follows is an analysis of the limited number of applicable standards relevant here. As will become apparent, there is very little variance among the states on the issues that matter.

---

[16] *E.g., Brand v. Nat'l Bank of Commerce*, 213 F.3d 636 (5th Cir. 2000) (holding nationwide class certification was appropriate in force-placed insurance case where various state contract claims were based on uniform agreements and policies); *Hall v. Midland Group*, 2000 WL 1725238, at *1, 3 (E.D. Pa. Nov. 20, 2000) (certifying nationwide class in force-placed hazard insurance case); *Steinberg v. Nationwide Mut. Ins. Co.*, 224 F.R.D. 67, 75 (E.D.N.Y. 2004) ("[T]he plaintiff's breach of contract claim involves ... general principles of contract interpretation that do not differ materially from one jurisdiction to the next."); *Enfield v. Old Line Life Ins. Co. of Am.*, 136 N.M. 398, 402 (2004) (certifying nationwide class on breach of contract claim because "the law of breach of contract is uniform enough that our traditional notions of fair play and justice would not be offended by litigating the issue under [our state's] law") (citations omitted); *Allapattah Servs., Inc. v. Exxon Corp.*, 333 F.3d 1248, 1261 (11th Cir. 2003) (finding no error in certification of 35-state breach of contract class), *aff'd sub nom., Exxon Mobil Corp. v. Allapattah Servs., Inc.,* 545 U.S. 546 (2005); *Mowbray v. Waste Mgmt. Holdings, Inc.*, 189 F.R.D. 194, 202 (D. Mass. 1999) (holding that a single named plaintiff with an Illinois contract claim may represent class members with similar claims arising under laws of many other states); *Cowit v. CitiMortgage, Inc.,* 2013 WL 940466, at *6 (S.D. Ohio Mar. 8, 2013) (allowing a nationwide breach of contract claim because "claims arising from the interpretation of a form contract are particularly suited for class treatment, and breach of contract cases are routinely certified as such") (citations omitted).

[17] Docket Entry #69, at 10-11 (internal quote marks and citations omitted).

### 1.     Elements of a breach of contract

As this Court advised, Gelfound has prepared extensive side-by-side comparisons of the various legal issues likely to surface here, starting with the elements of a breach of contract in all 51 potential jurisdictions (the 50 states plus the District of Columbia). The left-hand box, at **Att. F** to the **Lewis Declaration**, evidences almost complete uniformity on the elements of breach of contract among the jurisdictions. The only variance is that in a few states the element of damages is not necessary to state a breach of contract claim.[18] This variance doesn't fracture the class – Gelfound's described class is limited to those who paid the rider premium after the policy date anniversary on which they turned 86, meaning all class members were damaged because they overpaid. Thus, this slight variation among the states doesn't affect Gelfound's or the class's claims.

### 2.     Insurance policies are contracts of adhesion

The center box at **Att. F** shows that every jurisdiction views insurance contracts such as the one that binds Gelfound and the class with MetLife as adhesive. The significance:

> Where one of the parties draws a contract and the other must accept or reject but cannot vary the terms, the burden is upon the party drawing the contract to make the meaning plain. Where meaning is thus uncertain, as it is in the contracts here involved, the ambiguities and doubts must be resolved against the party who prepared the contract.[19]

> Contractual clauses which are "part of a 'boilerplate' agreement" in a contract of adhesion have their significance greatly reduced because of the inequality in the parties' bargaining power.[20]

---

[18] *E.g,* Idaho; Maine; Maine; Massachusetts; Minnesota; New Hampshire
[19] *A.W.G., Inc. v. Federal Crop Ins. Corp.*, 757 F.2d 720, 726 (8th Cir. 1985)(internal indenting and citation omitted).
[20] *Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 872 (Ill. 2005)(internal quote marks omitted).

Gelfound and every other class member benefits from this rule of construction.

### 3.       *Ambiguities will be construed against MetLife*

The box at the right-hand corner of **Att. F** summarizes each jurisdiction's rule concerning ambiguities in insurance policies. There is no variance among the jurisdictions – in each, ambiguities will be construed against the insurer (here, MetLife).[21] Accordingly, "[e]quivocation and uncertainty, whether in the significance of the terms used or in the form and construction of sentences, are to be resolved in favor of the insured and against the insurer."[22] And "if the terms of the policy are ambiguous then every doubt is to be resolved against the insurer."[23] Again, the rule applies to, and benefits, every single class member without regard to which jurisdiction's law applies.

### 4.       *The jury, and not the Court, will interpret the language if the Court cannot resolve the ambiguities through the rules of construction*

Attached at **Att. G** is another grid that summarizes the law in all 51 jurisdictions who – the Court or (in this case because a jury was requested) the jury – would ultimately interpret the MetLife language if its meaning cannot be understood through application of the rules of construction discussed above. In each jurisdiction, the answer is the same: the factfinder will. This is another common link that binds all class members.

---

[21] *See Kunin v. Benefit Trust Life. Ins. Co.*, 910 F.2d 534, 538-39 (9th Cir. 1990)( "According to the law of California and, indeed, every other state as well as the District of Columbia ambiguities in insurance contracts must be construed against the insurer. This rule of *contra proferentem* has been called 'the most familiar expression in the reports of insurance cases.' 2 G. Couch *et al., supra* note 6, § 15:74, at 334.").
[22] *Northern Security Ins. v. Hatch*, 683 A.2d 392, 395 (Vt. 1996)(internal quote marks and citation omitted).
[23] *Woogmaster v. Liverpool & London & Globe Ins. Co.*, 45 N.E.2d 394 396 (Mass. Sup. Jud. Ct. 1942).

### 5.      *Extrinsic evidence rules will not fracture the class*

The majority of issues raised by MetLife in its previous submission[24] deals with extrinsic evidence.  In this context, these variations will not defeat class certification.

The case of *Ellsworth v. U.S. Bank, N.A.*[25] is on point. There, plaintiffs moved to certify a much more complex contract-based claim (involving force-placed insurance). The plaintiffs sought a multi-state class, and one of the issues raised by the defendants (represented by some of the same law firms who represent MetLife here) was the differing jurisdictions' rules concerning extrinsic evidence.

The *Ellsworth* plaintiffs – as Gelfound does here – excluded those five jurisdictions[26] whose laws don't permit the consideration of extrinsic evidence to resolve contractual ambiguities. The *Ellsworth* court endorsed that limitation.[27] But the *Ellsworth* court found the variants among the remaining jurisdictions concerning extrinsic evidence not enough to defeat class certification. Word-for-word, its logic applies here:

> On this record, and based on counsel's argument, the court finds that these distinctions do not defeat predominance. These are form Fannie Mae/Freddie Mac Uniform Instrument mortgage contracts, Plaintiffs challenge Defendants' uniform FPI policies, and the alleged injury is the backdating and kickbacks. It is hard to see what extrinsic evidence would be relevant to interpreting the form contract terms or U.S. Bank's liability based on these theories, and U.S. Bank does not identify any extrinsic evidence or ambiguous contract terms. *Accord Ewert v. eBay, Inc.,* No. C–07–02198 RMW, 2010 WL 4269259, at *7 (N.D.Cal. Oct. 25, 2010). Also, with identical form contracts, courts in this district generally hold that extrinsic evidence is unlikely to be important, and ambiguous terms would be construed against the drafter. *See id.*; *see also In re Conseco Life Ins. Co.,* 270 F.R.D. 521 at 529 (noting Conseco's overstatement of the extent

---

[24] Docket Entry No. 48-5.

[25] 2014 WL 2734953 (N.D. Cal. June 13, 2014).

[26] *Id.* at *22 ("Plaintiffs' proposed class definitions exclude states that do not permit courts to consider parol evidence to resolve contractual ambiguities: Hawaii, Kentucky, Ohio, South Dakota, and the District of Columbia.")

[27] *Id.* at *24 ("The case is big enough.").

of any variations in state contract law, including the definition of breach, the existence of causation and damages requirements, and the admissibility of extrinsic evidence).

Moreover, when a form contract is at issue, courts in this district have held that a breach can be determined on a class-wide basis when the harm is the same and the contract terms are the same. *See id.*; *Vedachalam v. Tata Consultancy Services, Ltd.,* No. C 06–0963 CW, 2012 WL 1110004, at *3, 13–14 (N.D.Cal. Apr. 2, 2012). In *Verdachalam,* the court certified a national class alleging breach of a form employment contract. The specific amounts varied, but the contracts were uniform in their terms. *Id.* at * 11. The court explained that "where a form contract of adhesion is at issue, the court will, whenever reasonable, interpret the agreement 'as treating alike all those similarly situated, without regard to their knowledge or understanding of the standard terms of the writing' in order to 'effectuate the reasonable expectations of the average member of the public who accepts it.' " *Id.* at * 13 (quoting *Ewert,* 2010 WL 4269259, at *7); *see also* Restatement (Second) of Contracts § 211(1)-(2).

….

In sum, issues regarding extrinsic evidence do not necessarily defeat predominance in a case involving form contracts and, for the reasons stated above, do not defeat predominance in this case. It is not obvious that extrinsic evidence will be introduced at all, and at best (and on this record, entirely hypothetically), it would be non-individualized extrinsic evidence.[28]

*Ellsworth*'s language and logic cannot be distinguished here.

Excluding the five jurisdictions leaves more than enough class members to satisfy Rule 23.  MetLife produced a chart that shows – excluding persons from the five jurisdictions indicated above – 1,840 class members. [29]

### III.   CONCLUSION

The unique aspects of this case lend themselves to class treatment. The case law among the net 46 jurisdictions does not materially vary on any relevant issue here. The Court should certify Gelfound's described class.

---

[28] *Id.* at *22, 23.
[29] **Att. A.**

Dated: July 31, 2015.

_Jordan M. Lewis_
Jordan M. Lewis (FBN: 97997)
Kelley⁄Uustal, PLC
700 S.E. 3rd Avenue
Suite 300
Fort Lauderdale, Florida 33316
Telephone:    (954) 522-6601
Facsimile:    (954) 522-6608
Email:         jml@kulaw.com
Email:         trm@kulaw.com

_Attorneys for Plaintiff_

**CERTIFICATE OF SERVICE**

**WE HEREBY CERTIFY** that a true and correct copy of the foregoing has been

furnished by CM/ECF Electronic Notification this 31st day of July, 2015 to the following:

James F. Jorden, Esquire
Irma T. Reboso-Solares, Esquire
Jason P. Kairalla, Esquire
Carlton Fields Jordan Burt LLP
Miami Tower, Suite 4200
100 SE Second Street
Miami, Florida 33131
JJorden@cfjblaw.com
ISolares@cfjblaw.com
JKairalla@cfjblaw.com

***Attorneys for Defendant MetLife Insurance
Company of Connecticut***

By: _____
Jordan M. Lewis (Florida Bar No. 97997)