IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

ALVIN GELFOUND, individually, and on
behalf of all those similarly situated,

                                                    CASE NO. 13-cv-80479 (KAM)

            Plaintiff,

v.

METLIFE INSURANCE COMPANY OF
CONNECTICUT,

            Defendant.
_____/

**DECLARATION OF JORDAN M. LEWIS**

**1**.      I am Jordan M. Lewis. I am one of the attorneys representing plaintiff in this matter. I make this Declaration based upon my personal knowledge and under authority of 28 U.S.C. § 1746.

**2**.      At **Attachment A** to this declaration is the discovery response, including documents, of defendant MetLife Insurance Company of Connecticut, served on July 24, 2015.

**3**.      At **Attachment B** to this declaration is a copy of plaintiff Alvin Gelfound's application to MetLife for insurance.

**4**.      At **Attachment C** is a copy of a Feb. 4, 1994 correspondence from MetLife to Gelfound.

**5**.      At **Attachment D** is a copy of correspondence dated May 2, 1994 from Gelfound to MetLife.

**6**.      At **Attachment E** is a copy of correspondence dated May 13, 1994 from MetLife to Gelfound.

**7**.      At **Attachment F** is a grid that summarizes various aspects of contract law in 51 jurisdictions.

8.      At **Attachment G** is a second grid comparing other issues concerning contract interpretation.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on July 31, 2015.

By: _Jordan M. Lewis_
Jordan M. Lewis

# ATTACHMENT

# "A"

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 13-80479-CIV-MARRA/MATTHEWMAN

LINDA M. MARGOLIUS, personal representative of
the Estate of Alvin Gelfound, on behalf of ALVIN
GELFOUND and all those similarly situated,

        Plaintiff,

v.

METLIFE INSURANCE COMPANY OF
CONNECTICUT,

        Defendant.

_____/

### DEFENDANT'S RESPONSES AND OBJECTIONS TO PLAINTIFF'S SECOND SET OF INTERROGATORIES AND RELATED REQUESTS FOR PRODUCTION OF DOCUMENTS

Pursuant to Rules 26, 33, and 34 of the Federal Rules of Civil Procedure and Local Rule 26.1, defendant MetLife Insurance Company of Connecticut ("MICC") hereby responds and objects to Plaintiff's Second Set of Interrogatories and Related Requests for Requests for Production of Documents (the "Discovery Requests").

### GENERAL OBJECTIONS

1.      MICC objects to the Discovery Requests to the extent that they purport to impose obligations upon MICC that go beyond, are inconsistent with, or are not required by the Federal Rules of Civil Procedure or the Local Rules for the Southern District of Florida. MICC will respond in accordance with the Federal Rules of Civil Procedure and the Local Rules for the Southern District of Florida.

2.      MICC objects to the Discovery Requests to the extent that they seek documents or information that are not relevant.

1

3.      MICC objects to the Discovery Requests to the extent that they seek documents or information for periods of time outside the pertinent time period encompassed by the claims and defenses in this action as beyond the scope of permissible discovery.

4.      MICC objects to the Discovery Requests to the extent that they create an undue burden or expense.

5.      MICC objects to paragraph D of the Instructions to the Discovery Requests, which instructs MICC to provide "the source" of any document produced, because it seeks to impose obligations upon MICC that go beyond, are inconsistent with, or are not required by the Federal Rules of Civil Procedure or the Local Rules for the Southern District of Florida.

6.      MICC's responses to the Discovery Requests are based upon the information and documents presently available.  MICC reserves the right to supplement, amend, correct, or clarify its responses and objections to the Discovery Requests.

7.      All responses are made subject to these General Objections.  The fact that MICC may have supplied information or documents in response to any particular Discovery Request does not constitute an admission or acknowledgment that the information sought or documents are relevant or admissible.  By supplying any information or documents, MICC does not intend to and does not waive any of its general or specific objections to the interrogatories or the requests for production.

## MICC'S SPECIFIC RESPONSES AND OBJECTIONS
## TO PLAINTIFF'S INTERROGATORIES

MICC expressly incorporates each of the above General Objections into each of the following specific responses as if fully set forth therein

2

**INTERROGATORY NO. 1:** For each of the five rider forms identified in Request for Production No. 1, state:

      a.     The form disability policy with which each rider was used; and

      b.     The period during which each rider was sold.

**ANSWER:**

      a.     MICC objects to subsection (a) of this Interrogatory to the extent it seeks information that is not relevant to or tied to the facts of this case. Subject to the foregoing objection, MICC states as follows: None of the five rider forms identified in Request for Production No. 1 were used with any disability policy.

      b.     MICC objects to subjection (b) of this Interrogatory as overly broad and unduly burdensome. The period during which each of the five rider forms identified in Request for Production No. 1 was sold in conjunction with an LTC2 (long term care) policy varies by state. Each of the five riders was (and continues to be) subject to approval and regulation by the departments of insurance in the U.S. state, district, or territory in which it was approved for issuance and delivery. In order to be issued and delivered in a particular state, district, or territory, each rider had to be filed with and approved by the respective state's, district's, or territory's department of insurance. To determine the specific "period during which each rider was sold" in a particular state, district, or territory, MICC would be required to conduct a burdensome and time-consuming manual review of the policy filing and approval records for each rider for each state, district, and territory. MICC further objects to subsection (b) of this Interrogatory because it is not tailored to the rider form purchased by Alvin Gelfound or limited to a relevant time period or the applicable statute of limitations period.

Subject to the foregoing objections, MICC states as follows: Rider form H-5IR was generally issued from June 1990 until October 1998. Rider form H-5IR-1 was generally issued

3

from December 1990 until November 1994. Rider form H-5IR-2 was generally issued from August 1990 until February 1995. Rider form H-5IR-3 was generally issued from December 1990 until November 1994. Rider form H-5IR-4 was generally issued from 1991 until 1994.

**INTERROGATORY NO. 2:** For each insured who elected at least one of the five rider forms identified in Request for Production No. 1, state:

a. The billing address, by state, district or territory of all persons subject to the rider at any time during the class period. Note: This interrogatory seeks the total number of insureds, by state, by rider form. Thus, if (as an example), there were 73 insureds who were covered by rider form H-5IR at any time during the class period and who had a Maryland billing address, then that is the responsive answer for that state and that rider form.

**ANSWER:** MICC objects to this Interrogatory as vague, overly broad, and unduly burdensome because it requires an extensive, time-consuming, and unduly burdensome review and analysis of MICC's records. MICC also objects to this Interrogatory to the extent it "[t]he billing address . . . of all persons subject to the rider *at any time during the class period*" as overly broad and unduly burdensome. Because a policyholder's billing address may have changed one or more times during the course of the proposed class period, compliance with this request, as phrased, would require MICC to analyze its historical records to determine in what state each putative class member's billing address was located for every day of the proposed five-year class period. MICC further objects to this Interrogatory as overly broad, unduly burdensome, and irrelevant to the extent that it is not tailored to the rider form purchased by Alvin Gelfound or to relevant time periods tied to the applicable statute of limitations period for each state. Subject to the foregoing objections, MICC will produce a summary of data the responsive to this Interrogatory as of July 24, 2015. *See* list attached hereto as Exhibit A. MICC notes, however, that this list might include up to approximately 700 policies for which no premium was paid for a 5% Rider; MICC would be required to undertake a burdensome manual

4

review of each of those policies' files to determine whether the policyholder paid any amount of premium for the 5% Rider.

## MICC'S SPECIFIC OBJECTIONS AND RESPONSES
## TO PLAINTIFF'S REQUESTS FOR PRODUCTION OF DOCUMENTS

MICC expressly incorporates each of the above General Objections into each of the following specific responses as if fully set forth therein

**REQUEST FOR PRODUCTION NO. 1:**   Produce samples or exemplars of the following 5% Rider forms: H-5IR; H51R-1 [*sic*]; H-5-IR-2 [*sic*]; H-5IR-3, and H-5IR-4.

**RESPONSE:**  MICC objects to this Request to the extent it is not tailored to the rider form purchased by Alvin Gelfound or limited to a time period relevant to this action.  Subject to the foregoing objection, specimen copies of the requested riders will be produced.

Dated:  July 24, 2015.

James F. Jorden (Fla. Bar No. 343862)
Irma T. Solares (Fla. Bar No. 797073)
Jason Patrick Kairalla (Fla. Bar No. 594601)
CARLTON FIELDS JORDEN BURT, P.A.
100 S.E. Second Street, Suite 4200
Miami, FL 33131-2113
(305) 530-0050
(305) 530-0055 (facsimile)
jjorden@cfjblaw.com
isolares@cfjblaw.com
jkairalla@cfjblaw.com

*Counsel for Defendant MetLife Insurance Company of Connecticut*

5

## VERIFICATION

The undersigned swears under penalty of perjury that the foregoing answers to the Interrogatories are true and correct.

_Kerry Gilmurray_
Kerry Gilmurray

STATE OF __Virginia__ )
~~COUNTY~~ City OF __Lynchburg__ )

BEFORE ME, the undersigned authority, personally appeared Kerry Gilmurray, who is personally known to me or has produced __VA DL icc.__ as identification, and who, after being duly sworn, deposes and says that she executed the foregoing answers to the Second Set of Interrogatories to MetLife Insurance Company of Connecticut and that they are true, correct, and complete to the best of her knowledge.

Sworn to and subscribed before me on this __24__ day of July, 2015.

# 356062

_Heather D. Willoughby_
NOTARY PUBLIC, STATE OF __Virginia__

MY COMMISSION EXPIRES: __7/31/2017__

6

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served via U.S. Mail

and electronic mail on July 24, 2015 on the following counsel of record:

Jordan M. Lewis
Todd R. McPharlin
Kelley Uustal, PLC
700 S.E. 3rd Avenue
Ft. Lauderdale, FL 33316
Telephone: (954) 522-6601
Facsimile: (954) 522-6608
jml@kulaw.com
trm@kulaw.com

*Attorneys for Plaintiff Linda Margolius,*
*personal representative of the Estate of Alvin Gelfound*

_____
Irma T. Solares

101725857.3

7

Exhibit A

| RESIDENCE STATE | INFORCE | OUT OF FORCE | CONVERTED TO NFO | TTL |
|---|---|---|---|---|
| AK | 0 | 0 | 0 | 0 |
| AL | 1 | 5 | 0 | 6 |
| AR | 1 | 0 | 0 | 1 |
| AZ | 23 | 10 | 0 | 33 |
| CA | 80 | 61 | 0 | 141 |
| CO | 27 | 27 | 1 | 55 |
| CT | 67 | 35 | 0 | 102 |
| DC | 2 | 0 | 0 | 2 |
| DE | 7 | 6 | 0 | 13 |
| FL | 118 | 53 | 0 | 171 |
| GA | 13 | 9 | 0 | 22 |
| HI | 13 | 5 | 0 | 18 |
| IA | 24 | 13 | 0 | 37 |
| ID | 0 | 1 | 0 | 1 |
| IL | 24 | 16 | 0 | 40 |
| IN | 24 | 16 | 0 | 40 |
| KS | 9 | 6 | 0 | 15 |
| KY | 19 | 8 | 1 | 28 |
| LA | 6 | 3 | 0 | 9 |
| MA | 98 | 48 | 0 | 146 |
| MD | 27 | 26 | 0 | 53 |
| ME | 25 | 7 | 0 | 32 |
| MI | 8 | 8 | 0 | 16 |
| MN | 26 | 10 | 0 | 36 |
| MO | 8 | 8 | 0 | 16 |
| MS | 2 | 1 | 0 | 3 |
| MT | 2 | 1 | 0 | 3 |
| NC | 66 | 41 | 0 | 107 |
| ND | 2 | 0 | 0 | 2 |
| NE | 2 | 1 | 0 | 3 |
| NH | 11 | 9 | 0 | 20 |
| NJ | 103 | 56 | 0 | 159 |
| NM | 2 | 1 | 0 | 3 |
| NV | 3 | 3 | 0 | 6 |
| NY | 39 | 38 | 0 | 77 |
| OH | 24 | 9 | 0 | 33 |
| OK | 2 | 0 | 1 | 3 |
| OR | 9 | 6 | 0 | 15 |
| PA | 75 | 42 | 2 | 119 |
| PR | 1 | 0 | 0 | 1 |
| RI | 5 | 1 | 0 | 6 |
| SC | 28 | 21 | 1 | 50 |
| SD | 0 | 0 | 0 | 0 |
| TN | 4 | 9 | 0 | 13 |
| TX | 26 | 14 | 0 | 40 |
| UT | 1 | 0 | 0 | 1 |
| VA | 31 | 9 | 0 | 40 |
| VT | 8 | 3 | 0 | 11 |
| WA | 26 | 17 | 0 | 43 |
| WI | 27 | 16 | 0 | 43 |
| WV | 3 | 2 | 0 | 5 |

CONFIDENTIAL

MetLife 0006351

Exhibit A

| WY | 1 | 3 | 0 | 4 |
|---|---|---|---|---|
| | 1153 | 684 | 6 | 1843 |

CONFIDENTIAL

MetLife 0006352

## Annual 5% Benefit Inflator Rider

This Rider is made a part of the contract to which it is attached. All provisions of the basic contract not inconsistent with this Rider apply to it.

**Benefit-**We will increase the Daily Benefit Amount for Confined Care including any previous increases under this Rider by 5% on each anniversary of the Policy Date.

The amount of each increase will be calculated as follows:

First, we will multiply the Daily Benefit Amount for Confined Care, including any previous benefit increases on the current anniversary by 5%.

Then, we will round each increase to the nearest dollar.

We will add this amount to the Daily Benefit Amount for Confined Care to determine the increased Daily Benefit Amount for Confined Care.

When the Daily Benefit Amount for Confined Care is increased as a result of this Rider, the Daily Benefit Amount for Nonconfined Care (and Respite Care) will also be increased to maintain the proportional relationship between the Daily Benefit Amount for Confined Care and the Daily Benefit Amount for Nonconfined Care as shown on Page 3.

These increases to the Daily Benefit Amounts will not be provided on or past the Policy Date anniversary on which the Insured is age 86.

**Premium-**The premium for this Rider is shown on Page 3.

**Termination-**This Rider will terminate on the earliest of:

1. termination of the basic contract; or
2. failure to pay any premium due for this Rider and the basic contract; or
3. the next anniversary of the Policy Date after you request termination of this Rider; or
4. the date the Policy Maximum, excluding any increases under this Rider, is reached.

In the event of termination of this Rider, we will not decrease the Daily Benefit Amounts unless you request us to do so in writing.

This Rider shall not otherwise vary, alter or extend the terms of the contract.

THE TRAVELERS INSURANCE COMPANY

President

H-5IR                                    Page 15

MetLife 0006353

### Annual 5% Benefit Inflator Rider

This Rider is made a part of the contract to which it is attached. All provisions of the basic contract not inconsistent with this Rider apply to it.

**Benefit**-We will increase the Daily Benefit Amount for Confined Care including any previous increases under this Rider by 5% on each anniversary of the Policy Date.

The amount of each increase will be calculated as follows:

First, we will multiply the Daily Benefit Amount for Confined Care, including any previous benefit increases on the current anniversary by 5%.

Then, we will round each increase to the nearest dollar.

We will add this amount to the Daily Benefit Amount for Confined Care to determine the increased Daily Benefit Amount for Confined Care.

When the Daily Benefit Amount for Confined Care is increased as a result of this Rider, the Daily Benefit Amount for Nonconfined Care (and Respite Care) will also be increased to maintain the proportional relationship between the Daily Benefit Amount for Confined Care and the Daily Benefit Amount for Nonconfined Care as shown on Page 3.

These increases to the Daily Benefit Amounts will not be provided on or past the Policy Date anniversary on which the Insured is age 86.

**Premium**-The premium for this Rider is shown on Page 3.

**Termination**-This Rider will terminate on the earliest of:

1. termination of the basic contract; or

2. failure to pay any premium due for this Rider and the basic contract; or

3. the next anniversary of the Policy Date after you request termination of this Rider; or

4. the date the Policy Maximum, excluding any increases under this Rider, is reached.

**Reinstatement**-If any premium on the basic policy is not paid within the grace period, our later acceptance of premium will restore the policy as of the date we accept premium if we do not require an application or on the date we approve your application, if we require an application. Your restored policy will provide you the same benefits you had before you failed to pay premium.

In the event of termination of this Rider, we will not decrease the Daily Benefit Amounts unless you request us to do so in writing.
This Rider shall not otherwise vary, alter or extend the terms of the contract.

THE TRAVELERS INSURANCE COMPANY

President

H-5IR-1                          Page 16

MetLife 0006354

## Annual 5% Benefit Inflator Rider

This Rider is made a part of the contract to which it is attached. All provisions of the basic contract not inconsistent with this Rider apply to it.

**Benefit**-We will increase the Daily Benefit Amount for Confined Care including any previous increases under this Rider by 5% on each anniversary of the Policy Date.

The amount of each increase will be calculated as follows:

First, we will multiply the Daily Benefit Amount for Confined Care, including any previous benefit increases on the current anniversary by 5%.

Then, we will round each increase to the nearest dollar.

We will add this amount to the Daily Benefit Amount for Confined Care to determine the increased Daily Benefit Amount for Confined Care.

When the Daily Benefit Amount for Confined Care is increased as a result of this Rider, the Daily Benefit Amount for Nonconfined Care (and Respite Care) will also be increased to maintain the proportional relationship between the Daily Benefit Amount for Confined Care and the Daily Benefit Amount for Nonconfined Care as shown on Page 3.

These increases to the Daily Benefit Amounts will not be provided on or past the Policy Date anniversary on which the Insured is age 86.

**Premium**-The premium for this Rider is shown on Page 3.

**Termination**-This Rider will terminate on the earliest of:

1. termination of the basic contract; or

2. failure to pay any premium due for this Rider and the basic contract; or

3. the next anniversary of the Policy Date after you request termination of this Rider; or

4. the date the Policy Maximum, excluding any increases under this Rider, is reached.

In the event of termination of this Rider, we will not decrease the Daily Benefit Amounts unless you request us to do so in writing.

This Rider shall not otherwise vary, alter or extend the terms of the contract.

THE TRAVELERS INSURANCE COMPANY

President

H-5IR-2                                    Page 16

MetLife 0006355

## Annual 5% Benefit Inflator Rider

This Rider is made a part of the contract to which it is attached. All provisions of the basic contract not inconsistent with this Rider apply to it.

**Benefit**-We will increase the Daily Benefit Amount for Confined Care including any previous increases under this Rider by 5% on each anniversary of the Policy Date.

The amount of each increase will be calculated as follows:

First, we will multiply the Daily Benefit Amount for Confined Care, including any previous benefit increases on the current anniversary by 5%.

Then, we will round each increase to the nearest dollar.

We will add this amount to the Daily Benefit Amount for Confined Care to determine the increased Daily Benefit Amount for Confined Care.

When the Daily Benefit Amount for Confined Care is increased as a result of this Rider, the Daily Benefit Amount for Nonconfined Care (and Respite Care) will also be increased to maintain the proportional relationship between the Daily Benefit Amount for Confined Care and the Daily Benefit Amount for Nonconfined Care as shown on Page 3.

These increases to the Daily Benefit Amounts will not be provided on or past the Policy Date anniversary on which the Insured is age 86.

**Premium**-The premium for this Rider is shown on Page 3.

**Termination**-This Rider will terminate on the earliest of:

1. termination of the basic contract; or
2. failure to pay any premium due for this Rider and the basic contract; or
3. the next anniversary of the Policy Date after you request termination of this Rider; or
4. the date the Policy Dollar Maximum, excluding any increases under this Rider, is reached.

In the event of termination of this Rider, we will not decrease the Daily Benefit Amounts unless you request us to do so in writing.

This Rider shall not otherwise vary, alter or extend the terms of the contract.

THE TRAVELERS INSURANCE COMPANY

President

H-5IR-3                                    Page 15

MetLife 0006356

### Daily Benefit Amount Increase Rider

This Rider is made a part of the contract to which it is attached. All provisions of the basic contract not inconsistent with this Rider apply to it.

**Benefit-**We will increase the Daily Benefit Amount for Confined Care including any previous increases under this Rider by 5% on each anniversary of the Policy Date.

The amount of each increase will be calculated as follows:

First, we will multiply the Daily Benefit Amount for Confined Care, including any previous benefit increases on the current anniversary by 5%.

Then, we will round each increase to the nearest dollar.

We will add this amount to the Daily Benefit Amount for Confined Care to determine the increased Daily Benefit Amount for Confined Care.

When the Daily Benefit Amount for Confined Care is increased as a result of this Rider, the Daily Benefit Amount for Nonconfined Care (and Respite Care) will also be increased to maintain the proportional relationship between the Daily Benefit Amount for Confined Care and the Daily Benefit Amount for Nonconfined Care as shown on Page 3.

These increases to the Daily Benefit Amounts will not be provided on or past the Policy Date anniversary on which the Insured is age 86.

**Premium-**The premium for this Rider is shown on Page 3.

**Termination-**This Rider will terminate on the earliest of:

1. termination of the basic contract; or

2. failure to pay any premium due for this Rider and the basic contract; or

3. the next anniversary of the Policy Date after you request termination of this Rider; or

4. the date the Policy Maximum, excluding any increases under this Rider, is reached.

In the event of termination of this Rider, we will not decrease the Daily Benefit Amounts unless you request us to do so in writing.

This Rider shall not otherwise vary, alter or extend the terms of the contract.

THE TRAVELERS INSURANCE COMPANY

Chairman

H-5IR-4                               Page 15

MetLife 0006357

# ATTACHMENT

# "B"

**TheTravelers**

# LONG TERM CARE II

# Insurance Application

ALVIN ARRON GELFOUND

Proposed Owner/Insured's Name (print full name)

## LONG TERM CARE II PLAN (LTC 2)

| | Daily Benefit Amount | Elimination Period | | Yes | No | Policy Maximum Benefit Period |
|---|---|---|---|---|---|---|
| AGENT TO COMPLETE | $100 | ☐ 20 days | CPI Inflation Option | ☐ | ☑ | ☐ 3 years |
| | (Min. $50 | ☐ 60 days | 5% Inflation Option | ☑ | ☐ | ☐ 5 years |
| | Max. $250 | ☑ 100 days | Reduced Benefit Option | ☐ | ☑ | ☑ Unlimited |
| | $10 Increments) | ☐ 365 days | | | | |

Is the applicant's spouse also applying for a Travelers Long Term Care Policy at this time? ☐ Yes ☑ No

If Yes, Spouse's full name) _____

Please Note: If spouse is applying, a separate application is required.)

Estimated Term Premium $ 1347.60    Estimated Annual Premium $ 2642.40    Initial Term Premium Attached? ☐ Yes ☑ No

| Term of payment | | Annual | Semi-Annual | Quarterly | Monthly |
|---|---|---|---|---|---|
| ☐ Credit Card | ☐ Direct | ☐ | ☑ | ☐ | |
| ☐ APC | ☑ Statement Bill | ☐ | ☐ | ☐ | ☐ |

Does Statement Bill/MultiLife Discount apply? ☐ YES ☑ NO

| HOME OFFICE TO COMPLETE | FIELD OFFICE AND CODE | INDICATE SPECIAL INSTRUCTION (if any) | USE SPACE BELOW FOR PLATE OR AGENT'S NAME AND CODE |
|---|---|---|---|
| FIELD OFFICE TO COMPLETE | CONTRACT NUMBER | | |

GELFOUND 2

A 7070

## APPLICATION FOR LONG TERM CARE INSURANCE
### THE TRAVELERS INSURANCE COMPANY, ONE TOWER SQUARE, HARTFORD, CONNECTICUT 06183

**PART 1 APPLICANT INFORMATION**

1. Proposed Owner/Insured's Name *(Print full name)*  ALVIN ARRON GELFOUND
   Sex ☑ Male  ☐ Female
   Marital Status  MARRIED

Date of Birth *(month/day/year)* -24  Social Security Number  8764
Height *(ft., ins.)* 5 | 10
Weight *(lbs.)* 227

2. Residence Address *(no., street, city, state, zip code)* 2081 Bethesda MD
   Phone - Home ( 301 )
   Best time to call. (A.M.)  P.M.

3. Billing Address *(if different from residence address)*
   Business ( ) —

**PART 2 INSURANCE HISTORY**

1. Please list any major medical, hospital expense, hospital indemnity, home health care, medicare supplement, nursing home or other long term care coverage currently in force or being applied for (do not include Medicare):

| NAME OF COMPANY | POLICY NUMBER | TYPE OF COVERAGE | IS THIS POLICY BEING REPLACED? | REPLACEMENT DATE |
|---|---|---|---|---|
| Aarp | 60012573-1 | Medigap | ☐ YES  ☑ NO | |
| Transport | WI 38940 | LTC | ☑ YES  ☐ NO | At issuance of Travelers policy |
| | | | ☐ YES  ☐ NO | |
| | | | ☐ YES  ☐ NO | |

**IF YOU ALREADY ARE COVERED BY A LONG TERM CARE OR NURSING HOME POLICY WHICH IS NOT BEING REPLACED BY THIS TRAVELERS POLICY, YOU PROBABLY SHOULD NOT APPLY FOR THIS COVERAGE.**

2. Has the proposed insured ever had life or health insurance refused, rated, ridered or cancelled?  ☐ Yes  ☑ No
   If yes, give details

**PART 3 PERSONAL/MEDICAL HISTORY**

1. Do you need assistance or supervision of any kind to perform the following activities of daily living? (Please explain "Yes" answers below.)

   a. eating ☐ Yes ☑ No
   b. dressing ☐ Yes ☑ No
   c. bathing ☐ Yes ☑ No
   d. walking ☐ Yes ☑ No
   e. getting in and out of bed ☐ Yes ☑ No
   f. taking medications ☐ Yes ☑ No
   g. using the toilet ☐ Yes ☑ No

2. Do you ever use a wheelchair, walker, cane, or hospital bed?  ☐ Yes ☑ No

3. Do you share your residence with a spouse, relative, or other person(s)?  ☑ Yes ☐ No

Explain "Yes" answers to questions 1-3 here:
3 — Spouse

A-6799

2

NRL3504525

4. Do you live in a:   ☐ Private home   ☑ Apartment   ☐ Other (i.e. boarding house)?

Explain _Condominium_

5. Have you ever been diagnosed or been treated by a member of the medical profession for any of the following:

|  | YES | NO |  | YES | NO |
|---|---|---|---|---|---|
| a. Alcohol/drug dependency? | ☐ | ☑ | g. Disorder of the urinary system? | ☑ | ☐ |
| b. Nervous, mental or emotional disorder? | ☐ | ☑ | h. Disorder of the digestive system? | ☐ | ☑ |
| c. Alzheimer's or Parkinson's disease? | ☐ | ☑ | i. Arthritis, bone or joint disorder? | ☐ | ☑ |
| d. Cancer or tumor? | ☐ | ☑ | j. Bronchitis, asthma or other disorder of the respiratory system? | ☐ | ☑ |
| e. Blood pressure or heart disorder? | ☐ | ☑ |  |  |  |
| f. Stroke or circulation disorder? | ☑ | ☐ | k. Medical diagnosis of AIDS or ARC? | ☐ | ☑ |

| 6. Have you had any surgery, hospitalizations or confinements in a nursing or convalescent home the past two years? | ☐ Yes | ☑ No |
|---|---|---|
| 7. Have you been treated by a physician in the past 5 years? | ☑ Yes | ☐ No |
| 8. Are you currently taking any prescription medication? | ☑ Yes | ☐ No |
| 9. Has any surgery ever been recommended to you which has not been performed? | ☐ Yes | ☑ No |

Please provide details to "YES" answers to questions 5-9 below. Include dates, diagnosis, treatment, dosage and type of medication, and present condition:

5f. Cholesterol - takes Mevacor 20mg. 2x/day - past 3 years.
Dr. Edw. Mehlman (Pulmonary Assoc)   Old Georgetown Rd, Bethesda, MD.
Angioplasty - Dr Lew Lipson 5530 Wisconsin Ave   Chevy Chase, MD. 20815 - prescribed CALAN

5g. 1988 - Kidney stone - exploded - No further problems.
Dr. Michael Stanton. 8218. Wisconsin Ave   Bethesda Md.

7. as in 5F, 5G. + Dec 1991 - temporary loss of feeling in left arm & leg 5AW - lasted 1 Hr only
— Dr Seba. Krumholtz - 1401 N.W. 9th Ave Boca Raton, FL 33486-1396

8. as in 5F. Mevacor   No ongoing problems.
CALAN, 240mg/1/day, Allopurinol - for uric acid.  150mg / 1/day

Please be advised that you may be personally contacted or contacted by phone by a representative of The Travelers to verify this information and provide further details:

I declare that all statements and answers in this application (Parts 1, 2, and 3) are complete and true to the best of my knowledge and belief. I understand and agree that, except as provided in the Conditional Coverage Receipt (which bears the same number and date as this application), if that receipt is issued for money which is paid with this application, no coverage will take effect until (a) the Contract, Provision or Rider is delivered to me; and (b) the Initial Term Premium is paid in full: provided that all health and other conditions relating to insurability remain as described in this application.

The undersigned applicant and agent certify that the applicant has read or had read to him, the completed application and the applicant realizes any false statement or misrepresentation in the application may result in loss of coverage under the policy.

Dated on __5-5-92__   at __FAIRFAX, VA__ , x _____
(Month/Day/Year)          (City, State)        (Signature of proposed insured)

x _____
(Signature of Agent)

N° 3504525
GELFOUND 4

A-6799                                                3

# ATTACHMENT

# "C"

THE TRAVELERS COMPANIES
LIFE AND HEALTH SERVICE CENTER, 7MB
ONE TOWER SQUARE
HARTFORD CT 06183-5071          00478

February 4, 1994

ALVIN A GELFOUND
BETHESDA MD 20817

RE: LTC2867479
    Independent Care II Policy Enhancement Rider
    Effective Date of Enhancements Rider:   February 4, 1994

Dear Client:

We are pleased to inform you that The Travelers is adding new benefits to
your existing individual long term care policy via the attached "Enhancements Rider."
This means that your policy now includes these new benefits **REGARDLESS OF ANY
CHANGES IN YOUR HEALTH AND AT NO ADDITIONAL PREMIUM COST TO YOU.**

We have recently introduced our newest long term care policy, "Independent Care - LTC3"
which includes the features described in the attached "Enhancements Rider." Other
insurance companies have introduced "new and improved" long term care policies.
**UNLIKE THE TRAVELERS, HOWEVER, NO COMPANIES HAVE OFFERED THEIR
EXISTING POLICYHOLDERS AN UPGRADE PROGRAM WITH AS MANY
BENEFITS AND AT NO EXTRA COST.**

Our intent in providing this upgrade is to fulfill our responsibility to you as a customer.
We value your business and appreciate the trust you have in us. **A T THE TRAVELERS
THERE IS NO ONE MORE IMPORTANT THAN OUR CUSTOMER.** The attached
sheet entitled "LTC2-LTC3 UPGRADE PROGRAM" describes the benefits provided by
this Upgrade Program through the Enhancements Rider.

**PROCEDURES**

Please attach the Enhancements Rider to your policy. You may also want to keep this
letter and the "LTC2-LTC3 Upgrade Program" sheet with your policy for future reference.
No reply is necessary.

A copy of this letter has been sent to your local Travelers representative. If you have
questions about this Upgrade Program, please contact your Travelers Agent or call our
toll-free Customer Service number at 1-800-334-4298 Monday through Friday from 7:45
a.m. to 7:00 p.m. Eastern Time.

Thank you for doing business with The Travelers,

Sincerely,

Georgina L. Lucas
GELFOUND 25

cc: JOHN S HASLETT (HASLETT
    HASLETT MANAGEMENT GRP INC-GA

# ATTACHMENT "D"

From:Genworth Financial          4345222806          10/24/2012 17:57      #118 P.003/006

(Page 51 of 52)

Bethesda, Md. 20017
May 2, 1954

TRAVELERS
Customer Service Division.
One Tower Square 7HB
Hartford, Conn. 06183

Ref: POLICY NO. LROS 867479
LROS-867479

Gentlemen:

Reference is made to the above policy. I request that this policy be amended from an unlimited benefit time to a five (5) year benefit time. It is my understanding that the semi-annual premium will now become $1,071.91 instead of $1,347.62.

I thank you for your kind and immediate attention.

Very truly yours,

Alvin Gelfound

CC: Mr. Murray Brill

GELFOUND 35

# ATTACHMENT

# "E"



The Travelers

The Travelers Companies
One Tower Square
Hartford, CT 06183-5071

CUSTOMER SERVICE
LifeHaven Operation

May 13, 1994

ALVIN A GELFOUND

BETHESDA MD 20817

Insured: ALVIN A GELFOUND
Policy Number: TC1867479

Dear Mr. Gelfound:

Enclosed please find a Change-of-Benefits Provision page. Please attach this to your records.

If you have any questions, please call our Customer Service Unit toll free at 1-800-334-4298, Monday through Friday, from 7:45 a.m. to 7:00 p.m. Eastern Time.

Sincerely,

Karen Hanna
Karen Hanna
Customer Service Division, 7H8

GELFOUND 36

# ATTACHMENT

# "F"

**SUMMARY OF STATES' POSITIONS ON BREACH OF CONTRACT**

| Jurisdiction | Elements of Action for Breach | Insurance is a contract of adhesion | Construe ambiguities against insurer |
|---|---|---|---|
| Alabama | "The elements that must be proven in a breach-of-contract action include the existence of a contract, a material breach of that contract by one party, and damage to the other party as a result of the breach."<br><br>*Stockton v. CKPD Dev., LLC,* 936 So.2d 1065, 1078 (Ala. Civ. App. 2005) | "The insurance contract is one of adhesion, and its exclusionary clauses are to be strictly construed against the insurer."<br><br>*Middlesex Mut. Ins. Co. v. Wells*, 453 F. Supp. 808, 809 (N.D. Ala. 1978). | "A contract of insurance will be construed strictly against the insurer and liberally in favor of the insured. Ambiguous provisions of an insurance policy will be construed most strongly against the insurer and in favor of the insured."<br><br>*Twin City Fire Ins. Co. v. Alfa Mut. Ins. Co.*, 817 So.2d 687, 695 (Ala. 2001). |
| Alaska | "In order to assert a claim for breach of contract, a plaintiff must generally allege: (1) existence of a contract; (2) breach; (3) causation; and (4) damages."<br><br>*Nicdao v. Chase Home Fin.,* 839 F. Supp.2d 1051, 1068 (D. Alaska 2012). | "We have held that insurance policies are to be looked upon as contracts of adhesion for the purpose of determining the rights of the parties thereto."<br><br>*Graham v. Rockman*, 504 P.2d 1351, 1357 (Alaska 1972)(internal indenting and citation omitted). | "Ambiguities are resolved against the insurer."<br><br>*Starry v. Horace Mann Ins. Co.*, 649 P.2d 937, 939 (Alaska 1982). |
| Arizona | "To prevail on a breach of contract claim, [plaintiff is] required to prove a contract existed between him and [defendant], [defendant] breached the contract, and [plaintiff] suffered damages as a result."<br><br>*Goodman v. Physical Res. Eng'g, Inc.,* 270 P.3d 852, 855 (Ariz. Ct. App. 2011). | "In so doing, however, we must remember that the usual insurance policy is a special kind of contract. It is largely adhesive; some terms are bargained for, but most terms consist of boilerplate, not bargained for, neither read nor understood by the buyer, and often not even fully understood by the selling agent."<br><br>*Darner Motor Sales, Inc. v. Universal Underwriters Ins. Co.*, 140 Ariz. 383, 391 (Ariz. 1984). | "In addressing the question of coverage in similar cases, many courts have relied on the *contra proferentum* doctrine: if there is an ambiguity in the language of the insurance contract, the ambiguity will be construed against the insurer that writes the contract and in favor of the insured."<br><br>*Ohio Cas. Ins. Co. v. Henderson*, 939 P.2d 1337, 1339 (Ariz. 1997). |

| | | | |
|---|---|---|---|
| **Arkansas** | "A person may be liable for breach of contract if the complaining party can prove the existence of an agreement, breach of the agreement, and resulting damages."<br><br>*Ultracuts Ltd. v. Wal-Mart Stores, Inc.,* 33 S.W.3d 128, 133-34 (Ark. 2000) (quotation marks omitted). | "However, due to the reality that insurance contracts are contracts of adhesion, the courts have developed some special rules of construction, the most important of which is the rule that when a policy provision is ambiguous, the court must resolve that ambiguity in favor of the insured."<br><br>*Union Ins. Co. v. Knife Ins. Co. Inc.,* 897 F. Supp. 1213, 1214-15 (W.D. Ark. 1995). | "In particular, any written instrument such as a contract, binder, *application,* or memorandum, delivered by the insurer to an applicant, is strictly construed against the insurer where the language employed is ambiguous."<br><br>*Phelps v. U.S. Life Credit Life Ins. Co.,* 984 S.W.2d 425, 428 (Ark. 1999). |
| **California** | "In order to establish a breach of contract [plaintiffs] must demonstrate the existence of a contract that they performed or were excused from performing, that the contract was breached and that damages resulted from the breach."<br><br>*Habitat Trust for Wildlife, Inc. v. City of Rancho Cucamonga,* 96 Cal. Rptr. 3d 813, 839 (Cal. Ct. App. 2009). | "In our view, the group life and health insurance policy in question is an adhesion contract."<br><br>*Jones v. Crown Life Ins. Co.,* 86 Cal. App.3d 630, 636 (Cal. Ct. App. 1978). | "In the *Guidici* case it was further said: 'Appellant argues that all ambiguities in a policy of insurance are to be construed against the insurer. This is a truism well established."<br><br>*John G. Speirs & Co. v. Underwriters at Lloyd's London,* 191 P.2d 124, 125 (Cal. Dist. Ct. App. 1948). |
| **Colorado** | "[A] party attempting to recover on a claim for breach of contract must prove the following elements: (1) the existence of a contract, (2) performance by the plaintiff or some justification for nonperformance, (3) failure to perform the contract by the defendant, and (4) resulting damages to the plaintiff.  The 'performance' element in a breach of contract action means 'substantial' performance." | "We have long viewed insurance policies with a critical eye, as such policies, although they may not technically qualify as contracts of adhesion,  are not ordinary, bilateral contracts, either; they are 'not the result of bargaining' and are often imposed on a take-it-or-leave it basis.' "<br><br>*Bailey v. Lincoln Gen. Ins. Co.,* 255 P.3d 1039, 1049 (Col. 2011)(citations omitted). | "Colorado also follows the general rule of construction by which ambiguities in an insurance contract are construed against the insurer."<br><br>*Ferndale Dev. Co., Inc. v. Great American Ins. Co.,* 527 P.2d 939, 940 (Col. Ct. App. 1974). |

| | | | |
|---|---|---|---|
| | *Western Distrib. Co. v. Diodosio,* 841 P.2d 1053, 1058 (Colo. 1992) (citations omitted). | | |
| **Connecticut** | "The elements of a breach of contract action are the formation of an agreement, performance by one party, breach of the agreement by the other party and damages."<br><br>*Rosato v. Mascardo,* 844 A.2d 893, 902 (Conn. App. Ct. 2004) (quotation marks omitted). | "Connecticut recognizes that '[s]tandardized contracts of insurance continue to be prime examples of contracts of adhesion,  whose most salient feature is that they are not subject to the normal bargaining process of ordinary contracts.' "<br><br>*Empire Fire and Mar. Ins. Co. v. Lang*, 655 F. Supp.2d 150, 160 (D. Conn. 2009)(citation omitted). | "We, therefore, conclude that 'the ambiguous language should be construed in accordance with the reasonable expectations of the insured when he entered into the contract.... Courts in such situations often apply the contra proferentem rule and interpret a policy against the insurer.' "<br><br>*Connecticut Ins. Guar. Ass'n v. Fontaine*, 900 A.2d 18, 24 (Conn. 2006). |
| **Delaware** | "In order to survive a motion to dismiss for failure to state a breach of contract claim, the plaintiff must demonstrate: first, the existence of the contract, whether express or implied; second, the breach of an obligation imposed by that contract; and third, the resultant damage to the plaintiff."<br><br>*VLIW Tech., L.L.C. v. Hewlett-Packard Co.,* 840 A.2d 606, 612 (Del. 2003). | "It is true that an insurance policy is a contract of adhesion."<br><br>*Graham v. State Farm Mut. Auto. Ins. Co.*, 565 A.2d 908, 912 (Del. 1989). | "Finally, if the agreement is ambiguous and extrinsic evidence does not clarify the vague terms, then the ambiguity is to be resolved against the insurer per the *contra proferentum* rule."<br><br>*Viking Pump, Inc. v. Century Indem Co.,* 2 A.3d 76, 90 (Del. Ct. Chan. 2009). |
| **District of Columbia** | "To prevail on a claim of breach of contract, a party must establish (1) a valid contract between the parties; (2) an obligation or duty arising out of the contract; (3) a breach of that duty; and (4) damages caused by breach."<br><br>*Tsintolas Realty Co. v. Mendez, 984 A.2d* | "Professor Keeton argues that the principle is appropriate in view of the fact that an insurance policy is a contract of adhesion. Id. As applied to this case, we agree with Judge Keeton and explicitly base our interpretation of these policies on the expectations that Keene could have reasonably formed, as an objective matter, | "Relying on the principle of *contra proferentum*, which holds that 'any reasonable doubt which may arise as to the meaning or intent of' an insurance policy provision 'will be resolved against the insurer ...' "<br><br>*Athridge v. Aetna Cas. and Sur. Co.*, 604 F.3d |

| | | | |
|---|---|---|---|
| | 181, 187 (D.C. 2009). | on the basis of the policies' language."<br><br>*Keene Corp. v. Insurance Co. of North America*, 667 F.2d 1034, 1042 n.12 (D.C. Cir. 1981). | 625, 632 (D.C. Cir. 2010). |
| **Florida** | "The elements of a breach of contract action are: (1) a valid contract; (2) a material breach; and (3) damages."<br><br>*J.J. Gumberg Co. v. Janis Servs.*, 847 So.2d 1048 (Fla. 4th DCA 2003) (quotation marks omitted). | "Such insurance policies are known in law as 'contracts of adhesion ,' meaning 'a standardized contract, which, imposed and drafted by the party of superior bargaining strength [insurer], relegates to the subscribing party [insured] only the opportunity to *adhere* to the contract or *reject* it.' "<br><br>*Pasteur Health Plan Inc. v. Salazar*, 658 So.2d 543, 544 (Fla. 3rd DCA 1995)(citations omitted). | "Courts are to give effect to the intent of the parties as expressed in the policy language, and if the policy is ambiguous, the ambiguity must be resolved liberally in favor of the insured and strictly against the insurer who prepared the policy."<br><br>*Prudential Property & Cas. Ins. Co. v. Swindal*, 622 So.2d 467, 472 (Fla. 1993) (citations omitted). |
| **Georgia** | "A claim for breach of contract requires that a plaintiff show the breach of a contract and damages…the plaintiff in a breach of contract action has the burden of proving three elements: subject matter of the contract, consideration, and mutual assent by all parties to all contract terms."<br><br>*Roland v. Ford Motor Co.,* 655 S.E. 2d 259, 263 (Ga. Ct. App. 2007) (quotation marks omitted). | "The insurer argues that 'resident' in that provision means a regular resident of the household. This argument overlooks the principle that the burden is on the party preparing a contract of adehsion to make its terms precise and clear and that ambiguous terms in an insurance policy are construed favorably to the insured."<br><br>*Travelers Inc. Co. v. Mixon*, 162 S.E.2d 830, 831 (Ga. App. 1968). | "In view of this ambiguity, that interpretation which favors the insured prevails."<br><br>*Greenwood Cemetery, Inc. v. Travelers Indem. Co.*, 232 S.E.2d 910, 913 (Ga. 1977). |
| **Hawaii** | "[A] breach of contract claim requires a plaintiff to identify (1) the contract at issue; (2) the parties to the contract; (3) whether Plaintiff performed under the | "True, we have said more than once that 'insurance policies are contracts of adhesion … premised on standard forms prepared by the insurer's attorneys, … [and] they 'must be | "True, we have said more than once that 'insurance policies are contracts of adhesion … premised on standard forms prepared by the insurer's attorneys, … [and] they 'must be |

# ATTACHMENT

# "G"

| Jurisdiction | Ambiguity resolved by factfinder |
|---|---|
| **Alabama** | "[W]e cannot say that the trial court erred in concluding that the policies were ambiguous and that the interpretation of the definitions of 'occurrence' in the policies should have been submitted to the jury**."**<br><br>*Certain Underwriters at Lloyd's London v. Southern Natural Gas Co.*, 142 So.3d 436, 454 (Ala. 2013). |
| **Alaska** | "Contract interpretation generally is the purview of the trial court; the jury interprets the contract only in those cases where the court determines that the contract language is ambiguous as to the parties' intent."<br><br>*Alaska Housing Finance Corp. v. Salvucci,* 950 P.2d 1116, 1119 (Alaska 1997). |
| **Arizona** | "We recognize that if a contract is ambiguous, determining what the parties intended is a question of fact for the jury."<br><br>*Focus Point Properties, LLC v. Johnson*, 330 P.3d 360, 367 (Ariz. Ct. App. 2014). |
| **Arkansas** | "The evidence in this case supported the giving of the instruction, and it is a correct statement of the law that interpretation of an ambiguity in a contract is a matter for the jury."<br><br>*Home Mut. Fire Ins. Co. v. Jones*, 977 S.W.2d 12, 18-19 (Ark. Ct. App. 1998). |
| **California** | "Of course, if the contract is ambiguous or uncertain and contradictory extrinsic evidence has been received to explain away the ambiguity or uncertainty, the jury's function is to interpret the contract or the ambiguous portion of the contract**."**<br><br>*Rosner v. Valleycrest Productions Ltd.*, 2003 WL 1701888, *5 (Cal Sup. Ct. Jan. 13, 2003). |
| **Colorado** | "However, once a contract is adjudged ambiguous, the meaning of the ambiguous term is a question of fact to be determined and reviewed in the same manner and with the same deference as other questions of fact."<br><br>*Dorman v. Petrol Aspen, Inc.,* 914 P.2d 909, 919 (Col. 1996)(*en banc*). |
| **Connecticut** | "Typically, interpretation of ambiguous contract language is a question of fact for the jury…" |

| | |
|---|---|
| | *RBC Aircraft Products, Inc. v. Precise Machining & Mfg, LLC,* 26 F. Supp.3d 156, 181 (D. Conn. 2014). |
| **Delaware** | "In other words, where reasonable minds could differ as to the contract's meaning, a factual dispute results and the factfinder must consider admissible extrinsic evidence making summary judgment improper."<br><br>*Verizon Communications Inc. v. Illinois National Ins. Co.,* 2015 WL 1756423, *3 (Del. Sup. Ct. March 20, 2015). |
| **District of Columbia** | "Where a contract is ambiguous, 'the choice among reasonable interpretations ... is for the factfinder to make, based on the evidence presented by the parties to support their respective interpretations.' "<br><br>*N.W. v. District of Columbia*, 2015 WL 3507317,*3 (D.D.C. June 4, 2015). |
| **Florida** | "Although contract interpretation is generally a question of law for the Court, '[i]f the contract contains ambiguities [ ] a question of fact for the jury may be presented.' "<br><br>*Nature's Products, Inc. v. Natrol, Inc.*, 990 F. Supp.2d 1307, 1315 (S.D. Fla. 2013). |
| **Georgia** | "Finally, if the ambiguity  remains after applying the rules of construction, the issue of what the ambiguous language means and what the parties intended must be resolved by a jury**."**<br><br>*Gerguis v. Statesboro HMA Medical Group, LLC*, 772 S.E.2d 227, 229-30 (Ga. Ct. App. 2015)(internal indenting and citation omitted). |
| **Hawaii** | "Where the language of the contract is ambiguous, so that there is some doubt as to the intent of the parties, that intent is a question of fact."<br><br>*Bishop Trust Co. Ltd. v. Central Union Church of Honolulu*, 656 P.2d 1353, 1356 (Haw. Ct. App. 1983). |
| **Idaho** | "The issue of ambiguity must be determined by the court as a threshold matter of law; the jury's role is limited to determining the intent of the parties based on the evidence presented at trial."<br><br>*Ramco v. H-K Contractors, Inc.,* 794 P.2d 1381, 1384 (Idaho 1990). |
| **Illinois** | "The question of whether a contract is ambiguous is a question of law in Illinois. *Curia v. Nelson,* 587 F.3d 824, 829 (7th Cir.2009). But if 'contractual ambiguity is |

| | established, the task of interpreting the contract's meaning generally becomes a question of fact for the jury.' "<br><br>*Merix Pharmaceutical Corp. v. Clinical Supplies Management, Inc.*, 59 F. Supp.3d 865, 872-73 (N.D. Ill. 2014). |
|---|---|
| **Indiana** | "However, if the contract is ambiguous or uncertain in its terms and if the meaning of the contract is to be determined by extrinsic evidence, its construction is a matter for the factfinder."<br><br>*McLinden v. Coco*, 765 N.E.2d 606, 612 (Ind. Ct. App. 2002). |
| **Iowa** | "A contract is ambiguous when, after application of pertinent rules of interpretation to the face of the instrument, a genuine uncertainty exists as to which of two or more meanings is the proper one. The question of interpretation, i.e., the meaning to be given the words of a contract, is one of fact which may or may not be for the judge or the jury."<br><br>*Boyer v. Iowa High School Athletic Ass'n,* 152 N.W.2d 293, 298 (Iowa 1967). |
| **Kansas** | "Where an ambiguous expression is used in a written contract**,** it is proper to show by evidence what the parties understood and intended by the expression, and to submit to the jury**,** with proper instructions, the interpretation of the expression as used in the contract."<br><br>*Hemingway v. Torson*, 266 P. 26, 27 (Kan. 1928)(internal indenting and citation omitted). |
| **Kentucky** | "However, 'if the writing is ambiguous, the factual question of what the parties intended is for the jury to decide.' "<br><br>*Clark v. Hectus & Strause PLLC*, 345 S.W.3d 857, 859 (Ky. Ct. App. 2011). |
| **Louisiana** | "If the court makes a threshold finding that a contract is ambiguous**,** summary judgment is inappropriate and it becomes the task of a factfinder to make a factual finding as to the parties' intent."<br><br>*J. Ray McDermott Engineering, LLC v. Fugro-McClelland Marine Geosciences, Inc.,* 2006 WL 861004, *1 (E.D. La. March 29, 2006). |
| **Maine** | "If the language of the contract is ambiguous, however, |

| | |
|---|---|
| | its interpretation is a question of fact for the factfinder." *Flaherty v. Muther,* 65 A.3d 1209, 1214 (Maine Sup. Jud. Ct. 2013). |
| **Maryland** | "If a contract is unambiguous, 'the court must give effect to its plain meaning and not contemplate what the parties may have subjectively intended ...' *Nova Research, Inc. v. Penske Truck Leasing Co.,* 405 Md. 435, 448, 952 A.2d 275, 283 (2008). A contract term is ambiguous if, 'when read by a reasonably prudent person, it is susceptible of more than one meaning.' *Nova Research, Inc. v. Penske Truck Leasing Co.,* 405 Md. 435, 448, 952 A.2d 275, 283 (2008). If a term is ambiguous, its interpretation is a question for the factfinder. *Prison Health Services, Inc. v. Baltimore County,* 172 Md.App. 1, 8, 912 A.2d 56, 61 (Md.Ct.Spec.App.2006)." *MJ Harbor Hotel, LLC v, McCormick & Schmick Restaurant Corp.*, 599 F. Supp.2d 612, 616 (D. Md. 2009). |
| **Massachusetts** | "Ordinarily, ambiguities in contract language present questions of fact for the jury**.**" *PhoneDOCTORx, LLC v. Healthbridge Management, Inc.*, 58 F. Supp.3d 152, 160 (D. Mass. 2014). |
| **Michigan** | "However, 'the meaning of an ambiguous contract is a question of fact that must be decided by the jury' or other trier of fact." *WellsFargo Bank, N.A. v. Cherryland Mall Ltd., Partnership*, 812 N.W.2d 799, 807 (Mich. Ct. App. 2011). |
| **Minnesota** | "The question of whether a contract is ambiguous is a question of law for the Court, but construction of an ambiguous contract becomes a fact question for the jury**."** *American S.S. Co. v. Hallett Dock Co.*, 862 F. Supp.2d 919, 944 (D. Minn. 2012). |
| **Mississippi** | "If the terms of a contract are subject to more than one reasonable interpretation, it is a question properly submitted to the jury." *Isle of Capri Casino, Inc. v. Silver Land, Inc.,* 132 So.3d 588, 599 (Miss. Ct. App. 2013). |
| **Missouri** | "[O]nce a contract is deemed ambiguous, a question of fact arises and the issue is reserved for the jury." *Shaw Hofstra & Associates v. Ladco Dev., Inc.*, 673 F.3d |

|  | 819, 827 (8th Cir. 2012)(applying Missouri law). |
|---|---|
| **Montana** | "Where the question of intent depends upon the construction of an unambiguous contract, the question is one for the court alone; however, where a contract term is ambiguous or obscure or uncertain of meaning, the interpretation of the language, and thus, the determination of the parties' real intent, is a matter to be left to the consideration of the jury**."**<br><br>*Klawitter v. Dettmann*, 886 P.2d 416, 420 (Mont. 1994). |
| **Nebraska** | "When the terms of the contract are in dispute and the real intention of the parties cannot be determined from the words used, the jury, and not the court, should determine the issue from all the facts and circumstances."<br><br>*Luschen Bldg. Ass'n v. Fleming Cos. Inc.,* 415 N.W.2d 453, 459 (Neb. 1987). |
| **Nevada** | "Under Nevada law, it is the province of the jury to determine the meaning of an ambiguous contract**."**<br><br>*Rich v. Outdoor Media Dimensions, Inc.*, 183 Fed. Appx. 655, 656 (9th Cir. 2006). |
| **New Hampshire** | "In addition, when contract terms are ambiguous, and the trial court has properly looked to extrinsic evidence to determine the intent of the parties, determining the ambiguous terms' meaning should be left to the jury unless the meaning of the extrinsic evidence is so clear that reasonable people could only reach one conclusion."<br><br>*Dillman v. New Hampshire College*, 838 A.2d 1274, 1276 (N.H. 2003). |
| **New Jersey** | "Only when there is 'uncertainty, ambiguity or the need for parol evidence' will the interpretation of a contract be left to the jury."<br><br>*Petersen v. Township of Raritan*, 12 A.3d 250, 255 (N.J. Super. Ct. 2011). |
| **New Mexico** | "On the other hand, if the court determines that the contract is reasonably and fairly susceptible of different constructions, an ambiguity exists, and summary judgment would not be proper. Rather, the jury must resolve any factual issues presented by the ambiguity."<br><br>*Randles v. Hanson*, 258 P.3d 1154, 1162 (N.M. Ct. App. 2011). |
| **New York** | "Alternatively, '[w]here the language used is susceptible |

| | |
|---|---|
| | to differing interpretations, each of which may be said to be as reasonable as another,' then the interpretation of the contract becomes a question of fact for the jury and extrinsic evidence of the parties' intent properly is admissible."<br><br>*Little v. Landsman Dev. Corp.* 24 F. Supp.3d 294, 297 (W.D.N.Y. 2014). |
| **North Carolina** | "When an agreement is ambiguous and the intention of the parties is unclear, however, interpretation of the contract is for the jury."<br><br>*Commscope Credit Union v. Butler & Burke, LLP,* 764 S.E.2d 642, 651 (N.C. Ct. App. 2014)(internal indenting and citation omitted). |
| **North Dakota** | "Investors is correct in contending that it is the duty of the court to construe the contract, but when the court has construed the contract as being ambiguous, the jury must then determine the intention of the parties to the contract**."**<br><br>*Stetson v. Investors Oil, Inc.* 140 N.W.2d 349, 356 (N.D. 1966). |
| **Ohio** | "Moreover, contract interpretation is only turned over to the factfinder when the relevant contract language is ambiguous."<br><br>*Cameron v. Hess Corp.*, 974 F. Supp.2d 1042, 1050 (S.D. Ohio 2013). |
| **Oklahoma** | " 'Where the meaning of an ambiguous written contract is in dispute, evidence of extrinsic facts and circumstances throwing light on the intention of the parties is admissible.' *Altshuler v. Malloy,* 1963 OK 243, ¶ 0, 388 P.2d 1, 2 (Syl. N. 2 by the Court). 'T]he construction of such a contract then becomes a mixed question of law and fact and should be submitted to the jury for its determination under proper instructions by the court.' "<br><br>*Ahlschlager v. Lawton School Dist.,* 242 P.3d 509 (Ok. 2010). |
| **Oregon** | "If the court determines that the language in a contract is ambiguous, then resolving the ambiguity consistently with the intentions of the contracting parties presents a question of fact for a factfinder**."**<br><br>*State ex rel. Dept. of Educ. v. Vantage Technologies Knowledge Assessment, LLC*, 261 P.3d 17, 22 (Or. Ct. App. 2011). |

| Pennsylvania | "On the other hand, '[i]f the contract as a whole is susceptible to more than one reading, the factfinder resolves the matter.' "<br><br>*Norfolk Southern Ry. Co. V. Pittsburgh & West Virginia R.R.,* 2015 WL 1859127, *23 (W.D. Pa. April 22, 2015). |
|---|---|
| Rhode Island | "Where there is no ambiguity the contract is for the court to construe. However, where the language used is incomplete or ambiguous, the substance of the agreement may become a question of fact for the jury."<br><br>*Casey v. Lifespan Corp.*, 62 F. Supp.2d 471, 480 (D.R.I. 1999)(citations omitted). |
| South Carolina | "Determining what the parties intended becomes a question of fact for the jury only when the contract is ambiguous."<br><br>*Watson v. Underwood*, 756 S.E.2d 155, 161 (S.C. Ct. App. 2014). |
| South Dakota | "However, while there is no South Dakota case on the question, the weight of authority is to the effect that when there is an ambiguous contract, evidence must be introduced to determine what the intentions of the parties were and that such evidence creates a question of fact, which must be resolved by the jury."<br><br>*Delzer Const. Co. v. South Dakota State Board of Transp.*, 275 N.W.2d 352, 355 (S.D. 1979). |
| Tennessee | "Finally, '[o]nly if ambiguity remains after the court applies the pertinent rules of construction does [the legal meaning of the contract] become a question of fact' appropriate for a jury**.**"<br><br>*Maverick Group Marketing, Inc. v. Worx Environmental Products, Inc.*, 2015 WL 1602102, *3 (W.D. Tenn. April 9, 2015). |
| Texas | "When a contract is found to be ambiguous, the parties' intent is a determination for the factfinder."<br><br>*Philadelphia Indem. Ins. Co. v. White*, 421 S.W.3d 252, 255 (Tex. Ct. App. 2013). |
| Utah | "When ambiguity exists, the intent of the parties becomes a question of fact."<br><br>*Novell, Inc. v. Canopy Group, Inc.*, 92 P.3d 768, 774 (Utah Ct. App. 2004) (internal quote marks omitted). |
| Vermont | "Interpretation of the parties' intent becomes a question |

| | |
|---|---|
| | of fact for the factfinder only if the court has made the initial determination that the written document is ambiguous." *Hall v. State*, 54 A.3d 993, 999 (Vt. 2012). |
| **Virginia** | "Ordinarily, it is the duty of the court to construe a written contract when it is clear and unambiguous on its face, but when a contract is ambiguous it is necessary to resort to parol evidence to ascertain the intention of the parties. In such cases, if reasonable people could draw different conclusions, the meaning of the contract upon the evidence presented should be submitted to the jury." *Online Resources Corp. v. Lawlor*, 736 S.E.2d 886, 894 (Va. Sup. Ct. 2013). |
| **Washington** | "('The touchstone of contract interpretation is the parties' intent.'). Under the 'context rule,' the fact finder determines the contracting parties' intent by " 'viewing the contract as a whole, the subject matter and objective of the contract, all the circumstances surrounding the making of the contract, the subsequent acts and conduct of the parties to the contract, and the reasonableness of respective interpretations advocated by the parties.' " *Brown v. Hereford*, 2011 WL 3688969, *3 (Wash. Ct. App. Aug. 23, 2011). |
| **West Virginia** | "Only if the court makes the determination that the contract cannot be given a certain and definite legal meaning, and is therefore ambiguous, can a question of fact be submitted to the jury as to the meaning of the contract." *Millville Quarry, Inc. v. Liberty Mut. Fire Ins. Co.*, 43 F. Supp.2d 580, 583 (N.D.W. Va. 1999). |
| **Wisconsin** | "When a contract provision is ambiguous, and therefore must be construed by the use of extrinsic evidence, the question is one of contract interpretation for the jury**."** *Franck v. CBL Partners, LLC*, 2009 WL 590161, *2 (Wis. Ct. App. March 10, 2009). |
| **Wyoming** | "It is only where the meaning of a contract is ambiguous that its construction becomes a mixed question of law and fact to be determined by the factfinder at trial." *Burbank v. Wyodak Resources Dev. Corp.*, 11 P.3d 943, 947 (Wy. 2000). |