UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.:13-cv-80479-KAM

ALVIN GELFOUND, individually, and on
behalf of all those similarly situated,

      Plaintiff,

vs.

METLIFE INSURANCE COMPANY OF
CONNECTICUT,

      Defendant.

_____/

## OPINION AND ORDER DENYING PLAINTIFF'S SECOND RENEWED MOTION FOR CLASS CERTIFICATION

This matter is before the Court on Plaintiff's Second Renewed Motion for Class Certification

(DE 74). The motion is ripe for review. For the following reasons, Plaintiff's motion is denied.

### I. Background

Plaintiff Alvin Gelfound[1] initiated this putative class action in Florida state court, and

Defendant removed it to this Court under the Class Action Fairness Act (CAFA), 28 U.S.C. §

1332(d) (2012). (DE 1.) Plaintiff alleges that in 1992 he purchased a long-term care insurance policy

from Travelers Insurance Company, which Defendant Metlife Insurance Company of Connecticut

later acquired. At the same time, Plaintiff purchased an "Annual 5% Benefit Inflator Rider" that

would increase his daily benefit amount by 5% each year until he turned 86. Plaintiff paid an extra

---

[1] Mr. Gelfound passed away during the pendency of this action, and his daughter and personal representative, Linda M. Margolius, proceeds in his stead. (DE 36.) For convenience, the Court refers to Alvin Gelfound as Plaintiff and uses the personal pronoun "he."

premium for this annual increase. When Plaintiff turned 86, Defendant stopped increasing Plaintiff's daily benefit amount by 5% annually. Defendant continued, however, to charge Plaintiff an extra premium pursuant to the Rider. Plaintiff claims that Defendant breached its insurance contract with him by continuing to charge increased premiums after he turned 86.[2]

Initially, Plaintiff sought to certify a class defined as follows:

> All individuals who (a) purchased a Long Term Care policy from The Travelers Insurance Company (acquired by MetLife Insurance Company of Connecticut) [and] (b) purchased the Annual 5% Benefit Inflation Rider.

(DE 24 at 1.) The parties agreed that "the class definition should be narrowed," so the Court denied Plaintiff's motion to certify with leave to renew. (DE 55 at 3–4.)

Plaintiff again moved for certification, this time of the following class:

> All individuals who (a) purchased a LTC2 long term care policy from The Travelers Insurance Company (acquired by MetLife Insurance Company of Connecticut) and (b) who purchased an annual 5% benefit inflation rider as described on either form H-5IR, H-5IR-1, H-5IR-2, H-5IR-3 and/or H-5IR-4 (c) in circumstances in which the premium applicable to the 5% benefit inflation rider was charged to such individuals after the reached age 86.

(DE 56 at 1.) The Court rejected Plaintiff's argument that this entire class is governed by Connecticut law. (DE 69 at 6, 9.) The Court did not hold that this precluded Plaintiff from representing class members in other states, but did note that Plaintiff bore the burden of showing uniformity, or the existence of only a small number of applicable standards, among the laws of the fifty states. (DE 69 at 9–10.) Because Plaintiff's motion failed to take into account possible variations in state law governing the class's breach of contract claims (due to his strategy of arguing that the class as a whole is governed by Connecticut law), the Court denied Plaintiff's certification

---

[2] Plaintiff previously abandoned his class unjust enrichment claims and class claims for injunctive or declaratory relief. (DE 49 at 2.)

motion, again granting leave to amend. (DE 69 at 9–11.) The Court noted that in his renewed motion Plaintiff must undertake an extensive analysis addressing potential variations in state law. (DE 69 at 10–11.)

In his third motion for certification, Plaintiff now seeks certification of the following class:

> All individuals who (a) purchased a LTC2 long term care policy from The Travelers Insurance Company (acquired by MetLife Insurance Company of Connecticut) and (b) who paid an annual 5% benefit inflation rider on either form H-5IR, H-5IR-1, H-5IR-2, H-5IR-3 and/or H-5IR-4 (c) after the Policy Date anniversary on which they turned 86 (d) any time beginning Feb. 21, 2010 to the date certification is granted (e) in circumstances in which their policy application's billing address was not the District of Columbia, Hawaii, Kentucky, Ohio and/or South Dakota.

(DE 74 at 2.)

## II. Legal Standard

Federal Rule of Civil Procedure 23 governs the certification of a class. "For a district court to certify a class action, the named plaintiffs must have standing, and the putative class must meet each of the requirements specified in Federal Rule of Civil Procedure 23(a), as well as at least one of the requirements set forth in Rule 23(b)." *Klay v. Humana, Inc.*, 382 F.3d 1241, 1250 (11th Cir. 2004) (footnotes omitted), *abrogated on other grounds by Bridge v. Phx. Bond & Indem. Co.*, 553 U.S. 639 (2008). Rule 23(a) permits certification of a class only if the class satisfies the prerequisites of "numerosity, commonality, typicality, and adequacy of representation." *Valley Drug Co. v. Geneva Pharm., Inc.*, 350 F.3d 1181, 1188 (11th Cir. 2003).

Plaintiff asserts that certification is appropriate under Rule 23(b)(3), which permits class certification only if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." "The burden of

3

proof to establish the propriety of class certification rests with the advocate of the class." *Valley Drug*, 350 F.3d at 1187. "The decision to certify is within the broad discretion of the district court . . . ." *Klay*, 382 F.3d at 1251 (quoting *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 740 (5th Cir. 1996)).

### III. Discussion

#### A. Class Certification

Plaintiff seeks certification of a class that will require the Court to apply the laws of at least 46 states. The Court previously held that the law of the state in which each putative class member accepted delivery of his or her respective policy is the law that governs that class member's claim. (DE 69 at 6.) Plaintiff excludes from the putative class those whose billing address on their respective policy applications was in the District of Columbia, Hawaii, Kentucky, Ohio, or South Dakota. (DE 74 at 2.) Plaintiff claims that this condition will exclude from the class those policyholders whose claims would be governed by the law of one of these five jurisdictions, which, according to Plaintiff, are the only jurisdictions whose laws do not permit consideration of extrinsic evidence to interpret an insurance policy. Defendant correctly notes that Plaintiff's contention rests on the unsupported premise that all class members accepted delivery of their respective policies at their listed billing address. Assuming this premise is correct, this would leave the Court with the law of 46 states to apply. Even with this assumption, Plaintiff's motion must be denied.

In a multi-state class action, variations in state law may defeat both the predominance and superiority requirements of Rule 23(b)(3). *Klay*, 383 F.3d at 1261; *Castano*, 84 F.3d at 741. The Eleventh Circuit has held that "class certification is impossible where the fifty states truly establish

a large number of different legal standards governing a particular claim." *Klay*, 383 F.3d at 1261. Class certification may be appropriate, however, where "a claim is based on a principle of law that is uniform among the states" or "the applicable state laws can be sorted into a small number of groups, each containing materially identical legal standards." *Id.* at 1262.[3] Plaintiff does not contend that the applicable states' laws can be sorted into small groups allowing for the certification of subclasses. Therefore, the Court considers only whether Plaintiff demonstrates uniformity in the applicable legal standards of the 46 states whose laws govern the putative class's claims.

It is not the Court's obligation to survey the laws of 46 states. Plaintiff bears the burden of demonstrating that there is uniformity in the applicable legal standards among the laws of the 46 states at issue. *Id.* This is no easy task. Plaintiff "must credibly demonstrate, through an extensive analysis of state law variances, that class certification does not present insuperable obstacles" and "that there are no material variations among the law of the states for which certification is sought." *Id.* (quoting *Walsh v. Ford Motor Co.*, 807 F.2d 1000, 1017 (D.C. Cir. 1986) (Edwards and Ginsburg, J.J.); *Powers v. Gov't Emps. Ins. Co.*, 192 F.R.D. 313, 318–19 (S.D. Fla. 1998)).

In an effort to meet this burden, Plaintiff attaches charts to his motion that compare the laws of all 50 states and the District of Columbia. (DE 83 at 28–55.) These charts purport to show uniformity in the law regarding the elements for a breach of contract, the contention that insurance policies are contracts of adhesion, the principle that ambiguities in an insurance policy are construed

---

[3] There is no reason these principles do not apply with equal force when the proposed class requires application of 46, rather than 50, states' laws. *See Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*, 601 F.3d 1159, 1176–77 (11th Cir. 2010) (holding that lack of serious analysis of the variation in the contract law of six states is evidence of abuse of discretion in certifying a class).

against the insurer, and the proposition that ambiguities are resolved by the finder of fact. Plaintiff provides one quote from a court in each jurisdiction as to each of these issues. Plaintiff claims that this chart demonstrates that there is no material variation among the law of the states the Court must apply if the class is certified.[4]

Plaintiff fails to meet his burden because his chart does not address the legal standards for an issue that is at the heart of this case: the consideration of extrinsic evidence to interpret the policies at issue. In its oppositions to Plaintiff's prior class certification motions, and again in response to the instant motion, Defendant argued that the states have different standards for the consideration of extrinsic evidence to interpret an insurance policy. Defendant notes that one of its primary defenses is that extrinsic evidence supports its interpretation of the policies at issue. According to Defendant, this extrinsic evidence includes various outlines of coverage and marketing brochures provided to policyholders, as well as individualized sales presentations by insurance agents to various policyholders and communications with individual policyholders concerning the Annual 5% Benefit Inflator Rider. It also appears that the extrinsic evidence to support Defendant's defense will vary by policyholder. Despite having notice of this issue due to Defendant's responses to his previous class certification motions, Plaintiff's charts fail to address consideration of extrinsic evidence.[5]

---

[4] Because the Court denies Plaintiff's motion on other grounds, the Court expresses no opinion on whether these charts sufficiently demonstrate uniformity on the issues they purport to address.

[5] In his reply, Plaintiff urges the Court to not consider Defendant's extrinsic evidence argument because it is based on evidence that he claims was not identified (either originally or by supplement) in Defendant's Rule 26 initial disclosures. "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion . . . unless the failure was substantially justified or is harmless." Fed.

Plaintiff instead attempts to dispose of the extrinsic evidence issue by claiming that under his proposed class he has excluded policyholders whose claims would require application of the law of a jurisdiction that does not allow consideration of extrinsic evidence. Plaintiff's claim rests on the premise that the District of Columbia, Hawaii, Kentucky, Ohio, and South Dakota are the only jurisdictions that prohibit consideration of extrinsic evidence when interpreting an insurance policy. Plaintiff is wrong. For example, it is well-settled under Florida law that ambiguities in an insurance policy "must be construed against the insurer and in favor of coverage *without resort to consideration of extrinsic evidence.*" *Wash. Nat. Ins. Corp. v. Ruderman*, 117 So. 3d 943, 952 (Fla. 2013) (emphasis added). It is not the Court's obligation to determine how many states Plaintiff is wrong about. The fact that Plaintiff's analysis of the law is not credible is sufficient to find that Plaintiff has failed to meet his burden. *See Walsh*, 807 F.2d at 1017 (holding that plaintiff "must *credibly* demonstrate, through an extensive analysis of state law variances, that class certification does not present insuperable obstacles" (emphasis added)).

Plaintiff's error appears to result from his misplaced reliance on *Ellsworth v. U.S. Bank, N.A.*, No. C 12-02506 LB, 2014 WL 2734953 (N.D. Cal. June 13, 2014), which is the only case he cites in the brief section of his motion devoted to the extrinsic evidence issue. The *Ellsworth* court identified Hawaii, Kentucky, Ohio, South Dakota, and the District of Columbia as the only

R. Civ. P. 37(c)(1). Assuming without deciding that Defendant was derelict in its disclosure obligations, the violation was harmless. In both of its oppositions to Plaintiff's prior motions to certify, Defendant raised the same issues regarding extrinsic evidence that it raises again in opposition to the instant motion. Under these circumstances, Plaintiff cannot claim any lack of notice or unfair surprise. Indeed, Plaintiff was aware of these issues as he attempted to account for extrinsic evidence in his proposed class definition and addressed the extrinsic evidence issues in his motion. Plaintiff also had a further opportunity to address the extrinsic evidence in his reply.

jurisdictions that prohibit consideration of extrinsic evidence to resolve contractual ambiguities. *Id.* at * 22. Plaintiff apparently relied solely on the *Ellsworth* court's analysis of variations in state law without conducting an analysis of his own. Importantly, *Ellsworth* was not a case involving interpretation of an insurance policy; the court discussed consideration of parol evidence as to contracts in general. Relying entirely on the *Ellsworth* court's analysis, Plaintiff overlooked the possibility that a state's law on the interpretation of insurance policies may differ from its law on the interpretation of contracts in general. *See, e.g.*, *Ruderman*, 117 So. 3d at 950 n.3 ("Because this Court's precedent has long set forth special rules regarding construction of insurance contracts, Florida case law cited by Washington National that allows extrinsic evidence to clarify latent ambiguity in contracts other than contracts of insurance does not govern the resolution of the question now before this Court."). Plaintiff's attempt to shortcut his obligation to analyze variations among the various states' laws does not qualify as the type of credible and extensive legal analysis required for Plaintiff to meet his burden on class certification. Indeed, it provides even more reason to question the credibility of Plaintiff's already scant analysis of this issue.

Even if Plaintiff's class definition did preclude the application of the law of all states that do not permit consideration of extrinsic evidence, that alone would be insufficient because Plaintiff still fails to show uniformity in the law of states that *do* permit consideration of extrinsic evidence. The extrinsic evidence issue is more complicated than a binary question of whether a jurisdiction permits or prohibits consideration of extrinsic evidence to interpret an insurance policy. For example, some states allow extrinsic evidence to be used to *create* an ambiguity that otherwise is not apparent from the policy alone. *E.g.*, *City of Grosse Pointe Park v. Mich. Mun. Liab. & Prop. Pool*, 702 N.W.2d

106, 115 (Mich. 2005) (Cavanagh, J., with two Justices concurring and three Justices concurring in result) (holding that extrinsic evidence may be considered to prove the existence of a latent ambiguity in an insurance policy); *Ind. Lumbermen's Mut. Ins. Co. v. United Kiser Servs., LLC*, No. 307174, 2012 WL 6049634, at *3 (Mich. Ct. App. Dec. 4, 2012) (per curiam) (same). On the other hand, some states allow consideration of extrinsic evidence to establish the parties' intent only after the policy is proven to be ambiguous *independent* of the extrinsic evidence. *E.g.*, *Nat'l Union Fire Ins. Co. of Pittsburgh v. CBI Indus., Inc.*, 907 S.W.2d 517, 520–21 (Tex. 1995) (per curiam) (stating the rule as to both patent and latent ambiguities).

Other courts have indeed recognized that the states' laws concerning the use of extrinsic evidence to interpret contracts is far from uniform, and that the disparities among the states' laws may preclude class certification. *See, e.g.*, *Rapp v. Green Tree Servicing, LLC*, 302 F.R.D. 505, 510–11 (D. Minn. 2014) ("Figuring out the laws of each of the 50 states with respect to the admissibility of extrinsic evidence would be difficult enough; fashioning a plan for applying those laws on a class basis would be nearly impossible. Many courts have declined to certify nationwide classes on breach-of-contract claims for that reason—sometimes for that reason *alone*."); *Bowers v. Jefferson Pilot Fin. Ins. Co.*, 219 F.R.D. 578, 583–84 (E.D. Mich. 2004) ("With respect to the use of extrinsic evidence, not only does the Court have to deal with the variations in state law regarding its use, *i.e.*, when extrinsic evidence may be admitted and the type of extrinsic evidence that may be used, but as a preliminary step, the Court must determine in each instance, exactly what the law is in each state with respect to the use of extrinsic evidence. While the Court's brief review of state law suggests variations as set forth above, the Court believes that an in-depth review of each state's laws

(particularly for those states where the parties disagree as to what the law is) would be required before the Court could determine how to correctly use the extrinsic evidence. This alone contributes to the management difficulties of this case."). Plaintiff's failure to even identify, let alone analyze, the variations among the applicable 46 states' laws is fatal to his motion. *See Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*, 601 F.3d 1159, 1176–77 (11th Cir. 2010) ("[M]ore than a perfunctory analysis is required. 'The issue can only be resolved by first specifically identifying the applicable state law variations . . . .'" (citation omitted)).

Plaintiff's sole citation to *Ellsworth* does not further his argument. The *Ellsworth* court held that the distinctions among the laws of the states that permit consideration of extrinsic evidence did not defeat predominance because extrinsic evidence did not appear to be relevant to the issues in the case and the defendant did "not identify any extrinsic evidence or ambiguous contract terms." 2014 WL 2734953, at *22. *Ellsworth* is distinguishable because here Defendant identifies the extrinsic evidence that would support its defense. Also, unlike in *Ellsworth*, it appears that in this case at least some of the extrinsic evidence will be individualized to each member of the proposed class. *Cf. id.* at *23 ("It is not obvious that extrinsic evidence will be introduced at all, and at best (and on this record, entirely hypothetically), it would be non-individualized extrinsic evidence."); *see also Sacred Heart*, 601 F.3d at 1176–77 ("Even the most common of contractual questions—those arising, for example, from the alleged breach of a form contract—do not guarantee predominance if individualized extrinsic evidence bears heavily on the interpretation of the class members' agreements.").

On this record, Plaintiff fails to meet his burden of providing an extensive analysis that

credibly demonstrates that there are no material variations among the laws of the 46 states at issue regarding the use of extrinsic evidence to interpret an insurance policy. Indeed, it appears that both legal and factual questions regarding extrinsic evidence will predominate any legal and factual questions that are common to all putative class members. Thus, Plaintiff fails to satisfy the predominance and superiority requirements of Rule 23(b)(3).[6] Because this is Plaintiff's third attempt to move for class certification, the Court will not permit any further class certification motions. (*See* DE 74 at 3) (conceding that his motion is his "one last shot at getting this right").

**B. Jurisdictional Concerns**

Based on the Court's denial of class certification, it is unclear whether the Court retains subject-matter jurisdiction over this action, which was removed to this Court under the Class Action Fairness Act. There is a split of authority among courts in this district and throughout the nation as to whether a denial of class certification affects a court's retention of subject-matter jurisdiction under CAFA. *Compare Clausnitzer v. Fed. Exp. Corp.*, 621 F. Supp. 2d 1266, 1270 (S.D. Fla. 2008), *with Colomar v. Mercy Hosp., Inc.*, No. 05-22409-CIV-SEITZ, 2007 WL 2083562, at *2–3 (S.D. Fla. July 20, 2007).

The Eleventh Circuit has provided conflicting guidance on this issue. *Compare Walewski v. Zenimax Media, Inc.*, 502 F. App'x 857, 862 (11th Cir. 2012) (per curiam) ("We affirm the dismissal

---

[6] On this record, the Court need not determine whether a class ever may be certified if it requires application of the law of 46 states regarding the consideration of extrinsic evidence to interpret an insurance policy. Thus, the Court's decision does not foreclose the possibility that in another case some plaintiff could meet its burden of demonstrating that there are no material variations among the applicable state laws on this issue, or that the applicable state laws can be sorted into a small number of groups, each containing materially identical legal standards. The Court merely holds that the Plaintiff in this case has failed to meet that burden.

11

on the grounds that absent certification as a class action, the district court lacks subject matter jurisdiction over Walewksi's individual claim."), *with Vega v. T-Mobile USA, Inc.*, 546 F.3d 1256, 1268 n.12 (11th Cir. 2009) (stating, in dicta, that "jurisdictional facts are assessed at the time of removal; and post-removal events (*including non-certification*, de-certification, or severance) do not deprive federal courts of subject matter jurisdiction" (emphasis added)). The unpublished decision in *Walewski* does not address the *Vega* dicta or cite any authority for its holding. Neither case is binding.[7] *See Howard v. Warden*, 776 F.3d 772, 776–77  (11th Cir. 2015) (noting that unpublished opinions are not binding); *Edwards v. Prime Inc.*, 602 F.3d 1276, 1298 (11th Cir. 2010) ("And dicta is not binding on anyone for any purpose.").

Due to the uncertainty, the Court will order the parties to brief this jurisdictional issue.

### IV. Conclusion

Accordingly, it is hereby **ORDERED AND ADJUDGED** that Plaintiff's Second Renewed Motion for Class Certification (DE 74) is **DENIED**. The parties shall **SHOW CAUSE** within 14 days of this Order as to why this case should not be remanded to state court.

**DONE AND ORDERED** in chambers at West Palm Beach, Palm Beach County, Florida, this 29th day of February, 2016.

_____
KENNETH A. MARRA
United States District Judge

---

[7] At least one court in this district has noted that the statement in *Vega* is dicta and rejected it in favor of the holding in *Walewski*. *Karhu v. Vital Pharm., Inc.*, No. 13-60768-CIV-COHN, 2014 WL 1274119, at *3–4  (S.D. Fla. Mar. 27, 2014), *reconsideration denied*, 2014 WL 3540811 (S.D. Fla. July 17, 2014), *aff'd*, 621 F. App'x 945 (11th Cir. 2015). The Eleventh Circuit's decision affirming *Karhu* does not address the jurisdictional issue.